UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MAUREEN MARQUIS, <br><br> Plaintiff <br><br> v. <br><br> JOHNSON & JOHNSON SERVICES, INC. and ALEICIA LATIMER, <br><br> Defendants. | Case No. 25-cv-10749-DJC |

**MEMORANDUM AND ORDER**

**CASPER, C.J.**                                                                                                     **October 31, 2025**

## I.   Introduction

Plaintiff Maureen Marquis ("Marquis") has filed this lawsuit against Defendants Johnson & Johnson Services, Inc. ("JJSI") and Aleicia Latimer ("Latimer") (collectively, "Defendants") for disability discrimination (Count I as to JJSI) and retaliation (Count II as to Defendants) in violation of Mass. Gen. L. c. 151B, interference with rights under Mass. Gen. L. c. 151B (Count III as to Latimer) and violation of the Massachusetts Paid Family and Medical Leave Law ("PFML"), Mass. Gen. L. c. 175M (Count IV as to Defendants).  D. 1-1.  Latimer now has moved to dismiss Marquis's claims against her for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), D. 10; D. 12.[1]  For the reasons discussed below, the Court ALLOWS Latimer's motion to dismiss, D. 12.

---

[1] On April 7, 2025, Latimer filed a motion to dismiss for lack of personal jurisdiction, D. 10, and an amended motion regarding same, D. 12.  The Court notes that the only difference between the two motions is that the amended motion, D. 12, includes a certification that the parties

1

**II.     Standards of Review**

In ruling on a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) without an evidentiary hearing, a district court must apply the prima facie standard of review. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). "Under this standard, it is [the] plaintiff's burden to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution." Id. (quoting United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993)). The Court considers the facts alleged in the pleadings as well as the parties' supplemental filings. Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995); Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). The Court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." Mass. Sch. of Law at Andover, Inc. v. A.B.A., 142 F.3d 26, 34 (1st Cir. 1998) (citing Ticketmaster-N.Y., Inc., 26 F.3d at 203). In doing so, the Court will "not credit conclusory allegations or draw farfetched inferences." Ticketmaster-N.Y., Inc., 26 F.3d at 203 (citing Dartmouth review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989)). The Court is also required to "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Mass. Sch. of Law at Andover, Inc., 142 F.3d at 34.

**III.    Factual Background**

The following facts are drawn from Marquis's complaint, D. 1-1, and Latimer's sworn affidavit in support of her motion to dismiss, D. 11-1.

---

conferred pursuant to Local Rule 7.1(a)(2). See D. 12 at 2; D. Mass. L. R. 7.1(a)(2). The Court, therefore, DENIES the motion to dismiss, D. 10, as moot.

In May 2016, Marquis, a Massachusetts resident, began working as Senior Employee and Labor Relations Leader at JJSI, a corporation with a principal place of business in New Jersey. D. 1-1 ¶¶ 1-2, 6. During her entire employment with JJSI, Marquis worked remotely from her residence in Wakefield, Massachusetts. Id. ¶ 8.

In late February or March 2024, Marquis began reporting to Latimer. Id. ¶ 15; D. 11-1 ¶ 5. Latimer, JJSI Director of North America Employee Relations, has resided in Florida for more than twenty years and works from a Florida-based office. D. 11-1 ¶¶ 2-4. Latimer supervises thirty-two employees, most of which reside and work in Florida. Id. ¶ 4. Latimer has never visited Massachusetts for work. Id. ¶¶ 4, 10. Marquis would communicate with Latimer via e-mail and telephone. D. 1-1 ¶ 17. Marquis is Latimer's only direct report resided or worked in Massachusetts and she worked remotely from her residence with permission from JJSI. D. 11-1 ¶ 5. Latimer's supervision of Marquis did not include day-to-day management, and Marquis received her individual work assignments from the Employee Relations Service Delivery Team. Id. ¶ 6.

    A.    **<u>Marquis's Return to and Termination from JJSI</u>**

Marquis took disability leave from May 23, 2024 until August 5, 2024. Id. ¶ 7; D. 1-1 ¶¶ 22, 56, 74. Marquis returned to JJSI on August 5, 2024 on a part-time basis and on August 18, 2024 resumed a full-time schedule. D. 1-1 ¶¶ 24, 26, 57-58, 75. As alleged, her career at JJSI "drastically changed for the worse" upon disclosing her disability and taking medical leave. Id. ¶ 23 (emphasis omitted). Marquis alleges that in late August and September 2024, Latimer transferred Marquis's duties to another newly hired manager, excluded Marquis from meetings and marginalized her role at JJSI. Id. ¶ 27.

On September 25, 2024, during a virtual meeting with Latimer and JJSI's Human Resources Manager, Marquis was notified that her job had been eliminated and she would be terminated in thirty days. Id. ¶¶ 30-31, 59, 76.

On October 25, 2024, Marquis was terminated. Id. ¶¶ 34, 60, 77.

### IV. Procedural History

Marquis instituted this action in Middlesex Superior Court on March 6, 2025. D. 1-1. JJSI removed the matter to this Court on March 31, 2025. D. 1. On April 7, 2025, Latimer moved to dismiss the claims against her. D. 12. The Court heard the parties on the pending motion to dismiss, D. 12, and took the matter under advisement. D. 18.

### V. Discussion

To exercise personal jurisdiction over a defendant, the Court must "find sufficient contacts between the defendant and the forum to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process clause." Sawtelle, 70 F.3d at 1387; see Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015). Unlike other states' long-arm statutes, "the Massachusetts statute does not purport to extend jurisdiction as far as due process would allow." SCVNGR, Inc. v. Punchh, Inc., 478 Mass. 324, 328 (2017). Accordingly, the Court assesses its jurisdiction first under the long-arm statute before proceeding to due process analysis. Id. at 330.

#### A. Massachusetts's Long-Arm Statute

"Massachusetts's long-arm statute, [Mass. Gen. L. c. 223A, § 3], provides that [a] court may exercise personal jurisdiction over a person[, who acts directly or by an agent,] as to a cause of action in law or equity arising from the person's one or more specific acts or omissions, as enumerated in the statute." SCVNGR, Inc., 478 Mass. at 328 (internal quotation marks omitted). "[F]or jurisdiction to exist pursuant to § 3(a), therefore, the facts must satisfy two requirements: 1) the defendant must have transacted business in Massachusetts, and 2) the plaintiff's claim must

4

have arisen from the defendant's transaction of such business." Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 63 (D. Mass. 2001) (citing Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994)).

The "transacting business" clause of c. 223A, § 3(a) is construed "broadly." Shipley Co., Inc. v. Clark, 728 F. Supp. 818, 821 (D. Mass. 1990) (citing Nova Biomedical Corp. v. Moller, 629 F.2d 190, 193-94 (1st Cir. 1980)). Courts have interpreted this provision to cover instances in which a defendant engages in "the purposeful and successful solicitation of business from residents of the Commonwealth." Tatro, 416 Mass. at 767; see Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 113 (1st Cir. 1997) (collecting cases). A defendant's "physical presence is not required to satisfy § 3(a)." Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc., 764 F.2d 928, 933 (1st Cir. 1985). Rather, the touchstone is "whether the defendant attempted to participate in the [C]ommonwealth's economic life." United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st Cir. 1992). "This standard is not especially rigorous" and may be satisfied by mere "transitory contact with the forum." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 n.3 (1st Cir. 2016) (internal citation and quotation marks omitted). As to the second element, a "but for" test applies for determining when an injury "arises" from transacting business in Massachusetts. Sigros, 129 F. Supp. 2d at 65 (citing Tatro, 416 Mass. at 770–71). The relevant inquiry is "whether the defendant's contacts with the Commonwealth constitute the 'first step in a train of events' that results in injury to the plaintiff." Zamzam Telecard, Inc. v. N.J.'s Best Phonecards, 514 F. Supp. 2d 136, 138 (D. Mass. 2007) (quoting Tatro, 416 Mass. at 770).

"In general, an individual's status as a corporate officer is insufficient to establish the minimum contacts required to subject him or her to personal jurisdiction in a foreign forum." Sensitech Inc. v. LimeStone FZE, 548 F. Supp. 3d 244, 254 (D. Mass. 2021) (citing M-R Logistics,

5

LLC v. Riverside Rail, LLC, 537 F. Supp. 2d 269, 279 (D. Mass. 2008).  "Thus, personal jurisdiction over a corporate officer rests on whether there is 'an independent basis for jurisdiction based on an individual's actions,' rather than the corporation's contacts with the forum." Sensitech, 548 F. Supp. 3d at 254 (internal citation omitted).  "That inquiry considers whether the individual was a 'primary participant' in the alleged wrongdoing as it relates to the forum." Id. (internal citations omitted).  To be such a primary participant, "active entrepreneurial or managerial conduct in the State where jurisdiction is asserted will cause jurisdiction to attach." Kleinerman v. Morse, 26 Mass. App. Ct. 819, 824 (1989).  Assuming that Latimer's role as JJSI Director of North America Employee Relations is akin to that of a corporate officer, the Court must consider whether the Latimer's conduct in or relating to Massachusetts can reasonably qualify as "active entrepreneurial and managerial" conduct and whether that conduct relates to the claims in the complaint.  Id.

Marquis argues that Latimer attempted to participate in the Commonwealth's economic life and thereby satisfies sufficient contacts with Massachusetts under c. 223A, § 3(a) because Latimer "knowingly supervis[ed] [Marquis's] Massachusetts-based work, regularly communicat[ed] with her via email and telephone, process[ed] her medical leave requests, and ultimately terminat[ed] [Marquis's] employment while [Marquis] was physically present in Massachusetts." D. 13 at 13.  Further, Marquis alleges that Latimer was a primary participant engaged in "active managerial conduct" because she was Marquis's direct supervisor, approved her medical leave requests, made key decisions regarding Marquis's employment and "personally conducted [Marquis's] termination." Id. at 13.

Here, none of Latimer's conduct in or relating to Massachusetts as described in the complaint can reasonably qualify as "active entrepreneurial or managerial conduct." Kleinerman, 26 Mass. App. Ct. at 824.  As Latimer attests, Latimer's supervision of Marquis for eight months

did not include "day-to-day management" or giving Marquis her individual work assignments, Marquis was the only one of her thirty-two direct reports to reside or work in Massachusetts for remote work for JJSI and Latimer has never visited Massachusetts in connection with her employment. D. 11-1 ¶¶ 4-6, 10. Marquis does not allege that Latimer recruited or specifically engaged Marquis as a Massachusetts-based employee or that her supervision of Marquis's work was specific to Massachusetts in any way. See Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006) (noting "plaintiffs may not rely on unsupported allegations in their pleadings," and are instead "obliged to adduce evidence of specific facts" supporting personal jurisdiction) (internal citations omitted); see Lacy v. Jublia Pte Ltd., No. 20-P-1319, 2022 WL 982076, at *2 (Mass. App. Ct. Apr. 1, 2022) (holding that the chief executive officer of the defendant company did not engage in "active entrepreneurial or managerial conduct" in Massachusetts where he did not "reach[] out to Massachusetts in an individual capacity," did not recruit or negotiate an employment contract with the plaintiff, never traveled to Massachusetts and had minimal contact with plaintiff). Instead, their relationship as supervisor and employee appears to be the consequence of JJSI previously allowing Marquis to work remotely from her home state. See Collision Commc'ns, Inc. v. Nokia Sol. & Networks Oy, 485 F. Supp. 3d 282, 292 (D. Mass. 2020) (concluding there was no personal jurisdiction where plaintiff New Hampshire company only "happened to allow" one of its employees to work remotely from Massachusetts, from where the employee frequently communicated with defendant); see also Aub v. Technicolor Ent. Servs., 224 F. Supp. 2d 371, 374 (D. Mass. 2002) (concluding defendant's contacts with Massachusetts were "too fortuitous and incidental" where defendant's "reasons for hiring [plaintiff] had nothing to do with her location in Massachusetts," plaintiff's "services were not localized to Massachusetts, and it was of no consequence to [defendant] that [plaintiff] performed any of her work [in the Commonwealth]" and "[t]he fact that there were long-distance communications between the

parties by mail and telephone is not enough to justify the conclusion that [defendant] transacted business *in* Massachusetts") (emphasis in original).

Against this backdrop, it cannot be said that any regular e-mail and phone calls between Marquis and Latimer constitute "active entrepreneurial or managerial conduct" in Massachusetts. Kleinerman, 26 Mass. App. Ct. at 824. In Diamond Group, Inc. v. Selective Distribution International, Inc., 84 Mass. App. Ct. 545, 549-552 (2013), a case Marquis relies upon, the Court determined that the defendant distributor's multiple purchase orders placed by e-mail, telephone or facsimile from a Massachusetts supplier fell within Massachusetts's long-arm statute. Id. The Court concluded that the defendant had transacted business within the meaning of Section 3(a) where "[o]ver a period of years, the company engaged in an intentional course of ordering large amounts of inventory from a supplier in Massachusetts" and the "activity was voluminous, repetitive, and long running." Id. at 549-550. In that case, unlike here, the communications between the parties were in connection with agreements for the purchase and sale of goods, which constituted a "positive business connection with the Commonwealth." Id. at 551; see Hongyu Luo v. Tao Ceramics Corp., No. 13-cv-5280-F, 2014 WL 3048679, at *2 (Mass. Super. Ct. Apr. 10, 2014) (characterizing the defendant's contacts with plaintiff in Massachusetts as "purposeful, repetitive, and long-running" and concluding Massachusetts's long-arm statute's transacting business requirement was satisfied where the chief executive officer of the defendant company spoke with the plaintiff employee weekly for fifteen months to direct plaintiff to secure sales contracts in Massachusetts); cf. Lawrence v. Next Ins., Inc., 774 F. Supp. 3d 237, 258-59 (D. Mass. 2025) (concluding Massachusetts's long-arm statute's transacting business requirement was satisfied where the chief executive officer of the defendant company had "purposeful and continuous" contacts with plaintiff, including hiring plaintiff while knowing plaintiff was going to

8

work from Massachusetts and conducting frequent virtual meetings to supervise plaintiff's work and "facilitate a significant part of his business").

Although Marquis also relies upon Cossart and Lacy, see D. 13 at 13-14, those cases do not warrant a different conclusion here. In Cossart, 804 F.3d at 18-19, the court determined that the individual defendant "attempted to participate in the commonwealth's economic life" where it recruited and hired the Massachusetts-based plaintiff, "registered a sales office with the Commonwealth in order to facilitate his work for the company," and the company president and individual defendant "personally negotiated the employment contract that contemplated that th[e] employee would work out of Massachusetts and signed the certificate of registration that established the [company's] sales office in Massachusetts." Cossart, 804 F.3d at 18-19. As to the analysis in Lacy, 2022 WL 982076, at *1-3, the lack of personal jurisdiction there supports Latimer's position. There, the Court concluded that the long-arm statute did not provide a basis for conferring personal jurisdiction over the corporate officer even where "while knowing that [plaintiff] resided in Massachusetts, [the individual defendant] interviewed her, negotiated the employment contract, and communicated with her via telephone, text message, and email, before and during her short term of employment," because "there was no evidence that the [individual defendant] reached out to Massachusetts in an individual capacity," particularly where the corporate officers were in Singapore, the individual defendant lived there "never traveled to Massachusetts, did not recruit [plaintiff], and had only minimal contact with her consisting of a few telephone calls, text messages, and emails over a period of approximately two months or less." Id.

Marquis alleges that her claims arise from Latimer's transaction of business in Massachusetts because the alleged discriminatory and retaliatory conduct, such as Latimer excluding Marquis from meetings, transferring Marquis's responsibilities to another newly hired

manager and terminating Marquis, stem from Latimer's supervision of Marquis's Massachusetts-based work. D. 13 at 14. Given the Court's determination that Marquis had failed to demonstrate that Latimer was "transacting business" in Massachusetts, even assuming *arguendo* that the claims arose from same, Marquis still has failed to show a basis for personal jurisdiction over Latimer under the long-arm statute.

### B.  Due Process Requirements

Even assuming *arguendo* that Marquis had shown that the Massachusetts's long-arm statute was satisfied, the due process analysis also fails. "For jurisdiction to be proper, constitutional requirements of due process must be met." Shipley Co., 728 F. Supp. at 822; see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement, 326 U.S. 310, 319 (1945)). For a court to assert personal jurisdiction over a nonresident defendant, constitutional due process demands that the defendant have "minimum contacts" with the forum state, meaning that the defendant must "possess[] sufficient contacts with the forum state so that subjecting him, her, or it to the forum's jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" United Elec., Radio & Mach. Workers of Am., 960 F.2d at 1087 (quoting Int'l Shoe Co., 326 U.S. at 316).

There are two types of personal jurisdiction to consider in the constitutional analysis: general and specific. Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010) (citing Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005)). Since Marquis does not assert general jurisdiction, see D. 13 at 5, the Court's analysis focuses on whether the three requirements for specific jurisdiction are met here: relatedness, purposeful availment and reasonableness. PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 17 (1st Cir. 2019).

*1.     Relatedness*

The relatedness inquiry focuses on whether "the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities." Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009) (alterations in original) (quoting N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005)). This is a "flexible, relaxed standard," id. (quoting N. Laminate Sales, Inc., 403 F.3d at 25), but still requires a causal relationship between Marquis's claims and Latimer's forum-related conduct, Harlow, 432 F.3d at 61. Although not precisely proximate cause, "due process demands something like a 'proximate cause' nexus." Harlow, 432 F.3d at 61 (quoting Cambridge Literary Props. Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 295 F.3d 59, 65 (1st Cir. 2002)). The critical element for this inquiry is whether a defendant can reasonably anticipate that their conduct would subject them to the forum state jurisdiction for a particular claim. See Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 715 (1st Cir. 1996) (stating that "[a]dherence to a proximate cause standard is likely to enable defendants better to anticipate which conduct might subject them to a state's jurisdiction than a more tenuous link in the chain of causation").

Marquis argues there is a direct causal connection between Latimer's conduct relating to Massachusetts and Marquis's claims of discrimination and retaliation against Latimer. D. 13 at 6-7. Here, as alleged, Latimer's contacts with Massachusetts include serving as Marquis's supervisor while Marquis worked from Massachusetts, regularly communicating with Marquis via e-mail and telephone, approving Marquis's requests for medical leave, excluding Marquis from meetings and marginalizing her role with JJSI and notifying Marquis of her termination during a remote meeting. D. 1-1 ¶¶ 15-17, 21, 27, 30-31. Marquis satisfies the relatedness prong because her claims against Latimer are based, at least in part, on Latimer's communications with her in Massachusetts. "The transmission of information into Massachusetts by way of the mails, the

11

internet, or the telephone is decidedly a contact for purposes [of] the relatedness analysis." Lawrence, 774 F. Supp. 3d at 252 (quoting LaVallee v. Parrot-Ice Drink Prods. of Am., Inc., 193 F. Supp. 2d 296, 303 (D. Mass. 2002)).

Accordingly, the Court concludes the relatedness prong is satisfied.

### 2. *Purposeful Availment*

"The purposeful availment requirement ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state." Weinberg v. Grand Circle Travel, LLC, 891 F. Supp. 2d 228, 245 (D. Mass. 2012) (citing Sawtelle, 70 F.3d at 1391). The inquiry into purposeful availment focuses on acts "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing Int'l Shoe Co., 326 U.S. at 319). "[T]he Supreme Court has explained that 'the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" Knox v. MetalForming, Inc., 914 F.3d 685, 691 (1st Cir. 2019) (quoting PREP Tours, Inc., 913 F.3d at 20). Both foreseeability and voluntariness are cornerstones of the purposeful availment inquiry. See C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 66 (1st Cir. 2014).

Marquis contends she has satisfied the purposeful availment requirement because, as alleged, Latimer's contacts with Massachusetts include being Marquis's supervisor while Marquis worked from Massachusetts, regularly communicating with Marquis via e-mail and telephone, approving Marquis's requests for medical leave, excluding Marquis from meetings and marginalizing her role with JJSI and notifying Marquis of her termination during a remote meeting. D. 1-1 ¶¶ 15-17, 21, 27, 30-31. None of this conduct, however, can reasonably give Latimer notice that she would be subject to personal jurisdiction in Massachusetts, Nowak, 94 F.3d at 715,

12

particularly where there are no allegations that Latimer "deliberately target[ed]" Massachusetts or Marquis as a Massachusetts-based employee, Baskin-Robbins Franchising LLC, 825 F.3d at 36, such as by recruiting her or negotiating her employment contract, and where Latimer attests Marquis was her only direct report in Massachusetts, that her supervisory role did not include day-to-day management of Marquis.  D. 11-1 ¶¶ 5-6.  See Knox, 914 F.3d at 693 (stating that the purposeful availment analysis "will vary with the quality and the nature of the defendant's activity") (quoting PREP Tours, Inc. 913 F.3d at 20); cf. Ouellette v. True Penny People, LLC, 352 F. Supp. 3d 144, 154 (D. Mass. 2018) (concluding there was purposeful availment where defendant solicited plaintiff for employment in Massachusetts and negotiated plaintiff's employment contract for work based in Massachusetts); King v. Prodea Sys., Inc., 433 F. Supp. 3d 7, 14-15 (D. Mass. 2019) (concluding there was purposeful availment where defendant "purposefully and intentionally engaged" with plaintiff in Massachusetts by recruiting plaintiff, negotiating employment contract allowing work in Massachusetts and soliciting business with plaintiff in Massachusetts); Cossart, 804 F.3d at 21-22 (concluding there was purposeful availment where the individual defendant recruited plaintiff from his residence in Massachusetts, negotiated an employment contract with plaintiff that contemplated work from Massachusetts and the provision of requisite office equipment, registered a sales office in Massachusetts and kept the registration current and plaintiff conducted significant work in Massachusetts as foreseen by the defendants).

 In Lawrence, a case Marquis relies upon, see D. 13 at 8-10, a different session of this Court noted that "[i]n cases in which remote communications supply the predicate for the contacts that ground specific or case-linked personal jurisdiction over an out-of-forum defendant, the three factors considered key in this [C]ircuit are the defendant's in-forum solicitation of the plaintiff's services, the defendant's anticipation of the plaintiff's in-forum services, and the plaintiff's actual

performance of extensive in-forum services." Lawrence, 774 F. Supp. 3d at 252-53 (quoting PREP Tours, Inc., 913 F.3d at 20) (internal quotation marks omitted and emphasis in original). In that case, the plaintiff, based in Massachusetts, brought an action against the chief executive officer at her former employer, based in California, alleging retaliation and interference under Chapter 151B, tortious interference with advantageous business relationships and violations of the PFML and FMLA. Id. at 244, 247-48. The court concluded that "[like] the defendant executives in Rissman and Cossart, [the individual defendant] participated in soliciting [the plaintiff's] services in the forum, and therefore must have reasonably foreseen that they would be performed there; beyond what those defendants did, [the individual defendant] also personally and regularly oversaw the in-forum performance of those extensive services through communications directed into the forum," id. at 256. In this case, solicitation by Latimer is notably absent. Even assuming *arguendo* that foreseeability is satisfied here because Latimer became aware that Marquis was working remotely, the other cornerstone of voluntariness is not satisfied. See id. at 256-57; see Phillips v. Prairie Eye Ctr., 530 F.3d 22, 28 (1st Cir. 2008) (noting that "[v]oluntariness requires that the defendant's contacts with the forum state 'proximately result from actions by the defendant *himself*'") (quoting Burger King Corp., 471 U.S. at 475) (emphasis in original); see also Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 292 (1st Cir. 1999) (noting that "[w]ithout evidence that the defendant actually reached out to the plaintiff's state of residence to *create* a relationship—say, by solicitation[]—the mere fact that the defendant willingly entered into a tendered relationship does not carry the day") (internal citation omitted and emphasis in original); Adams v. Gissell, No. 20-cv-11366-PBS, 2021 WL 2786277, at *12-13 (D. Mass. May 24, 2021) (concluding defendant's alleged contacts with Massachusetts, including "continued supervision and direction of [employee's] remote work" and a visit to Massachusetts, "were not the result of

14

[defendant's] own choices and actions" and were insufficient to show purposeful availment and establish personal jurisdiction).

In CVS Pharmacy, Inc. v. Brown, No. 21-cv-070-WES, 2021 WL 807666, at *3 (D.R.I. Mar. 3, 2021), the plaintiff argued the defendant purposefully availed himself of "the privilege of conducting activities in Rhode Island because he signed a noncompete agreement stating that Rhode Island law governs any disputes arising from the contract," "worked for a Rhode Island company for two years, [traveled] to Rhode Island once, and accepted stock in CVS." Id. The Court reiterated that "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him" and determined it did not have specific jurisdiction over the defendant. Id. (quoting Walden v. Fiore, 571 U.S. 277, 285 (2014)). Specifically, the Court noted "CVS [did] not make any assertions or provide any evidence regarding whether and with what frequency [defendant's] work involved direct interactions with employees in Rhode Island," and that "to the extent that [the defendant's] relationship with CVS itself involved a connection with Rhode Island, it was not a connection that he purposefully created" because the defendant had come to work for CVS after the company he originally accepted a position with, Aetna, was acquired by CVS. Id. at 4 (determining that "[a]lthough [defendant] acceded to a relationship with a Rhode Island company by maintaining his employment for two years following the acquisition, he did not initiate or seek out a relationship with a Rhode Island company"). Here, Latimer also "did not initiate seek out a relationship" with a Massachusetts resident despite acceding to a supervisory role. See id.

Accordingly, Marquis has failed to satisfy the purposeful availment requirement here.

### 3. Reasonableness Factors

The reasonableness inquiry is based on a balancing of the following "Gestalt factors": "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3)

15

the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Cossaboon, 600 F.3d at 33 n.3 (quoting Harlow, 432 F.3d at 67). "The purpose of the [G]estalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close." Nowak, 94 F.3d at 717. Thus, "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." Ticketmaster-N.Y., Inc, 26 F.3d at 210.

As for the first factor, the Court assumes that it will be burdensome for Latimer, who resides in Florida, to appear in Massachusetts. Still, because "staging a defense in a foreign jurisdiction is almost always inconvenient and/or costly," Latimer has not demonstrated that the exercise of personal jurisdiction in Massachusetts is "onerous in a special, unusual, or other constitutionally significant way." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994); see D. 11 at 8-9; D. 16-1 at 2-6. This factor does not weigh heavily against the exercise of personal jurisdiction here.

With respect to the second factor, Marquis argues that Massachusetts has a compelling interest in adjudicating this dispute given the alleged violations of Massachusetts laws and its "strong stake in protecting its residents from workplace discrimination and enforcing its employment protection statutes." D. 13 at 11. Here, Massachusetts does not have a strong interest in adjudicating this case with respect to Latimer due to the lack of showing that Latimer solicited Marquis specifically or initiated a relationship for services in Massachusetts and that Latimer's supervision of Marquis included daily management, individual work assignments or significant employment decisions related to Massachusetts. See Michaud v. Solomon, No. 20-cv-11999-DJC, 2021 WL 2190988, at *5 (D. Mass. May 29, 2021) (determining that "the Commonwealth's

16

interest in adjudicating [the] dispute [was] substantially undercut by the doubts surrounding the direct contacts between [the defendants] and the calls to [the plaintiff] in Massachusetts") (citing Ticketmaster-N.Y., Inc, 26 F.3d at 211); Kunian v. Smollon, No. 18-cv-12256-DJC, 2019 WL 2106115, at *10 (D. Mass. May 13, 2019) (noting that "Massachusetts does not have a strong interest in adjudicating [the] case because of the tenuous connections between the alleged breaches and the state"). Accordingly, this factor weighs against keeping the lawsuit against Latimer in Massachusetts.

The third factor requires the Court to consider "the plaintiff's interest in obtaining convenient and effective relief." Cossaboon, 600 F.3d at 33 n.3 (quoting Harlow, 432 F.3d at 67). Although "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience," Sawtelle, 70 F.3d at 1395, this factor does not weigh heavily in favor of maintaining litigation in Massachusetts for the aforementioned reasons.

With respect to the fourth factor, which is the judicial system's interest in obtaining the most effective resolution of the controversy, Marquis asserts "splitting this litigation between multiple forums would be inefficient and risk inconsistent results, particularly since [Marquis's] claims against [JJSI] will proceed in Massachusetts." D. 13 at 11. The fourth factor, is, at best, neutral. It is generally considered "a wash," Nowak, 94 F.3d at 718, because "[e]ven though Massachusetts courts can effectively administer justice in this dispute, they have no corner on the market." Baskin-Robbins Franchising LLC, 825 F.3d at 41; see Confederate Motors, Inc. v. Terny, 831 F. Supp. 2d 405, 414 (D. Mass. 2011) (noting that "[i]n any event, the situation where there is jurisdiction over a company but not its officers is not uncommon–yet it does not create jurisdiction where none exists"). Given that this is Plaintiff's chosen forum, this factor likely falls in Marquis's favor, but perhaps only slightly so.

Finally, as to the fifth factor, although generally "Massachusetts has a clear interest in affording its citizens a convenient forum in which to bring their employment claims," Crowe v. Harvey Klinger, Inc., 277 F. Supp. 3d 182, 194 (D. Mass. 2017), "that interest is not enough to tip the scale in favor of establishing personal jurisdiction over [Latimer] in the Commonwealth," Katz v. Spiniello Cos., 244 F. Supp. 3d 237, 249 (D. Mass. 2017), in light of the other Gestalt factors and Marquis's failure to satisfy the purposeful availment requirement, see Ticketmaster-N.Y., Inc, 26 F.3d at 210. This is not an instance where social policy compels adjudication in Massachusetts and a federal court sitting in a different jurisdiction is nonetheless fully capable of applying Massachusetts's anti-discrimination and employment protection laws if appropriate, see Baskin-Robbins Franchising LLC, 825 F.3d at 41 (citing Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 67 (2013)).

Taken together, the Gestalt factors do not support the conclusion that it would be reasonable to exercise personal jurisdiction over Latimer here.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Latimer's amended motion to dismiss for lack of personal jurisdiction. D. 12.

**So Ordered.**

/s Denise J. Casper
Chief United States District Judge